# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **NUTRITIONAL BRANDS INC.** | ) | |
| 1610 W. WHISPERING WIND DR. | ) | |
| PHOENIX, AZ 85085 | ) | CASE NO: |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| v. | ) | |
| | ) | |
| **FINDUQ LLC D/B/A FINDUQ** | ) | |
| 238 LINDBERGH PL. | ) | |
| FLOOR 3, SUITE 5 | ) | |
| PATERSON, NJ 07503 | ) | |
| | ) | |
| **BOOK AND BEYOND LLC D/B/A LYDIA** | ) | |
| **ONLINE** | ) | |
| 238 LINDBERGH PL. | ) | |
| SUITE 407 | ) | |
| PATERSON, NJ 07503 | ) | |
| | ) | |
| **ANSAS GLOBAL LLC D/B/A** | ) | |
| **ANSASGLOBAL** | ) | |
| 238 LINDBERGH PL. | ) | |
| FLOOR 3, SUITE 6 | ) | |
| PATERSON, NJ 07503 | ) | |
| | ) | |
| **CERBERUS TRADING LLC D/B/A** | ) | |
| **CERBERUSTRADING** | ) | |
| 238 LINDBERGH PL. | ) | |
| FLOOR 3, SUITE 1016 | ) | |
| PATERSON, NJ 07503 | ) | |
| | ) | |
| **DARK FASHION LLC D/B/A WILLOWUS** | ) | |
| 238 LINDBERGH PL. | ) | |
| SUITE 304 | ) | |
| PATERSON, NJ 07503 | ) | |
| | ) | |
| **BOOKANDBEYOND LLC D/B/A** | ) | |
| **BOOKANDBEYOND** | ) | |
| 238 LINBERGH PL. | ) | |

SUITE 402                                                  )
PATERSON, NJ 07503                                         )
                                                           )
**SAS TRADING LLC D/B/A GREENYGREEN**                      )
238 LINDBERGH PL.                                          )
SUITE 303                                                  )
PATERSON, NJ 07405                                         )
                                                           )
**PRO DEALS LLC D/B/A PRODEALS**                           )
238 LINDBERGH PL.                                          )
SUITE 302                                                  )
PATERSON, NJ 07503                                         )
                                                           )
**AQUAVERDE TRADE LLC D/B/A**                              )
**AQUAVERDE TRADE**                                        )
238 LINDBERGH PL.                                          )
SUITE 304                                                  )
PATERSON, NJ 07503                                         )
                                                           )
**ALI KUTLU**                                              )
4 LAURA DR.                                                )
CEDAR GROVE NJ 07009                                       )
                                                           )
**NURTEN KUTLU**                                           )
4 LAURA DR.                                                )
CEDAR GROVE NJ 07009

                          Defendants.

---

## COMPLAINT
## (JURY DEMAND ENDORSED HEREIN)

---

Plaintiff Nutritional Brands Inc. ("*Plaintiff*" or "*NBPure*") by and through counsel, and for its Complaint against the above-named defendants (collectively, the "*Defendants*") states as follows:

4895-1123-1174, v. 2

## INTRODUCTION

1.      Defendants are engaged in the unauthorized distribution and sale of Plaintiff's brand name products on Amazon.com, Inc.'s United States-based e-commerce platform, Amazon.com (the "*Amazon Marketplace*"), as well as Walmart.com (the "*Walmart Marketplace*") and potentially other e-commerce sites.

2.      Defendants are also using Plaintiff's trademarks—without Plaintiff's authorization—to market and sell the products on the Amazon Marketplace and the Walmart Marketplace.

3.      As a result of Defendants' unauthorized sales and use of Plaintiff's trademarks, Defendants are confusing and misleading consumers, interfering with Plaintiff's relationships with its authorized dealers, and violating Plaintiff's rights in its proprietary intellectual property.

4.      Defendants' unauthorized sales and infringing activities are unlawful and have harmed, and will continue to harm, Plaintiff.

## PARTIES

5.      NBPure is a corporation formed and existing under the laws of the State of Nevada with a principal place of business in Phoenix, Arizona.

6.      NBPure manufactures and sells a variety of health and nutritional supplements, and other related products (collectively, the "*Products*").

7.      Defendants Finduq LLC ("*Finduq*"), Book and Beyond LLC ("*Lydia Online*"), Ansas Global LLC ("*AnsasGlobal*"), Cerberus Trading LLC ("*CerberusTrading*"), Dark

3

Fashion LLC ("*WillowUs*"), BookandBeyond LLC ("*BookandBeyond*"), SAS Trading LLC ("*GreenyGreen*"), Pro Deals LLC ("*ProDeals*"), Aquaverde Trade LLC ("*Aquaverde Trade,*" and collectively with Finduq, Lydia Online, AnsasGlobal, CerberusTrading, WillowUS, BookandBeyond, GreenyGreen, and ProDeals, the "*Defendant Entities*"), are limited liability companies organized under the laws of New Jersey, and are each headquartered in Paterson, New Jersey.

8.      Defendants Ali Kutlu ("**Ali**") and Nurten Kutlu ("**Nurten**" and with Ali, the "*Kutlu Defendants*") are individuals who reside in Paterson, New Jersey and directly or indirectly own and operate the Defendant Entities.

9.      Upon information and belief, Defendant Entities are related entities and the Kutlu Defendants are direct or indirect owners of such entities, which store and distribute the Products from the same location.

10.     Defendants sold and continue to sell the Products and use Plaintiff's proprietary intellectual property in connection with such sales without the authority or consent of Plaintiff and despite Plaintiff's requests that Defendants cease their unlawful conduct.

11.     Plaintiff has not authorized Defendants to sell the Products or otherwise use Plaintiff's valuable intellectual property.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction over Plaintiff's trademark claims pursuant to 28 U.S.C. § 1338(a).

4

13.     This Court also has original subject matter jurisdiction over Plaintiff's unfair competition claims pursuant to 28 U.S.C. § 1338(b) because they are joined with Plaintiff's substantial and related trademark claims.

14.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental subject matter jurisdiction over Plaintiff's remaining claims because they form part of the same case or controversy as Plaintiff's trademark and unfair competition claims.

15.     This Court has general personal jurisdiction over Defendants because Defendants are physically located within the State of New Jersey and conduct their business in New Jersey.

16.     Particularly, Defendants are subject to the Court's jurisdiction pursuant to N.J. Ct. R. 4:4-4 because, *inter alia*, Defendants sell the Products to consumers, conduct business, and store the Products in the State of New Jersey.

17.     Defendants are subject to the specific personal jurisdiction of this Court because Defendants have sufficient, minimum contacts with the State of New Jersey with respect to the subject matter of this action to satisfy Constitutional due process because Defendants, *inter alia*, conduct business within this District, are registered limited liability companies in this District, and maintain principal places of business in this district. As a result of Defendants' business activities directed to the State of New Jersey, Defendants could reasonably anticipate being brought into court in this forum.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside within this District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### *Plaintiff's Business*

19.     Plaintiff sells and advertises the Products bearing trademarks validly registered with the United States Patent and Trademark Office, including Registration Numbers 7033482 and 6576697 (collectively, the "**Trademarks**" and each, a "**Trademark**"), which are identified in the attached **Exhibit A**.

20.     An affiliate of Plaintiff, IP Reserve LLC, is the owner of the Trademarks and has licensed the Trademarks to Plaintiff with the right to enforce the Trademarks.

21.     Additionally, IP Reserve LLC has specifically assigned all claims against Defendants with respect to the Trademarks to Plaintiff.

22.     Plaintiff has spent considerable resources to develop, market, and protect the Trademarks, which have become a symbol of quality and effectiveness in the industry.

23.     Plaintiff actively uses, advertises, markets, and sells all of its Products bearing the Trademarks on the internet and throughout interstate commerce.

24.     Plaintiff advertises and sells the Products on its United States website (https://nbpure.com) (the "**Website**"), through select online retailers, on the Amazon Marketplace, and in traditional brick-and-mortar establishments.

25.     Plaintiff also sells to and through certain wholesalers, distributors, and authorized resellers (each, an "*Authorized Reseller*" and collectively, the "*Authorized Resellers*").

26.     Plaintiff strives to ensure that consumers of its Products are receiving authentic Products from either Plaintiff itself or one of its reputable Authorized Resellers.

27.     Plaintiff promotes its Products through commercial advertisement campaigns and online advertisements.

28.     Plaintiff's advertisement and promotional campaigns have resulted in the explosion of popularity in marketplaces with positive consumer reviews for the Products' premier quality.

29.     Because of Plaintiff's extensive efforts to develop a premier product and effectively market the Products, consumers now recognize the Trademarks as being associated with Plaintiff's high-quality and reliable Products.

30.     As a result of these actions, Plaintiff has become an industry leader in the market, and the Products are synonymous with high-end, top-quality supplements and other health-related products.

## The Growth of E-Commerce

31.     With the explosion of e-commerce websites, particularly the Amazon Marketplace, has come great benefits to manufacturers and consumers in terms of convenience.

4895-1123-1174, v. 2

32.     However, with this convenience has come problems and challenges for manufacturers in terms of ensuring that products sold to consumers are genuine and defect-free.

33.     Plaintiff and other businesses must ensure that products sold are genuine and defect-free, are handled with all requisite quality controls and come with all warranties, in order to maintain, and continue building, their valuable goodwill and reputation.

34.     In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online directly to consumers.

35.     Many times, the products sold by unauthorized resellers may be materially different in that they are damaged, expired, sold without warranty, and/or of an inferior quality.

36.     Specifically, even if the products are initially genuine, unauthorized resellers may sell products without warranties, that are not handled with requisite quality controls, are of an inferior quality, that are defective, and/or that are in violation of a business's rights in its intellectual property.

37.     Unauthorized resellers may also sell counterfeit goods as new products, causing more disruption and customer confusion in the marketplace.

38.     However, given the nature of e-commerce sales, consumers unknowingly purchase these products believing them to be genuine.

39.     Indeed, on the Amazon Marketplace, all sales of a particular product are sold under a single Amazon Standard Identification Number ("*ASIN*"), so consumers face an

even more significant challenge trying to determine whether a product is coming from an authorized reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

40.     This is precisely the problem that e-commerce websites create; anonymous third parties sell products that may be inferior or defective, yet the product listing appears identical to a product sold by a reputable source as a result of Amazon's single ASIN used by various sellers of the same product.

41.     Ultimately, consumers are harmed, as they unknowingly buy a materially different, non-genuine product as compared to a legitimate product from the manufacturer.

### *The Reseller Agreement and Resale Policy*

42.     Generally, when Plaintiff sells its Products to Authorized Resellers, Plaintiff enters into contracts with such Authorized Resellers (each, a "*Reseller Agreement*" and collectively, the "*Reseller Agreements*"). An example of a Reseller Agreement is attached as **Exhibit B**.

43.     In addition, Authorized Resellers are required to abide by Plaintiff's Authorized Resale Policy (the "*Resale Policy*"). The Resale Policy is attached as **Exhibit C**.

44.     If Plaintiff does not enter into a Reseller Agreement with a particular reseller, that reseller can still be deemed an Authorized Reseller to the extent such reseller abides by the Resale Policy.

45.     Authorized Resellers must sell Products pursuant to a Reseller Agreement and/or in accordance with the Resale Policy.

46.     Plaintiff uses the Resale Policy and Reseller Agreement to: (i) protect its customers by ensuring the quality of its Products, their presentation, and the associated services meet certain standards; (ii) protect its Authorized Resellers by promoting fair competition between Authorized Resellers; and (iii) protect its brand, its goodwill, and its valuable intellectual property, including its proprietary formulas, images, designs, content, and the Trademark.

### *Quality Controls*

47.     Under the Reseller Agreement, Authorized Resellers must, *inter alia,* (i) have sufficient knowledge of the industry and products competitive with each Product (including specifications, features and benefits) so as to be able to explain the same in detail to customers; (ii) observe all reasonable directions and instructions given to it by Plaintiff in relation to the marketing, advertisement and promotion of the Products; (iii) market, advertise, promote and resell Products and conduct business in a manner that reflects favorably at all times on the Products and the good name, goodwill and reputation of Plaintiff; and (iv) promptly notify Plaintiff of any complaint or adverse claim about any Product or its use of which the Authorized Reseller becomes aware.

48.     The Reseller Agreement also requires Authorized Resellers to inspect each Product to ensure the Products are all in good saleable condition, free of any defects.

49.     The Resale Policy also imposes additional obligations on Authorized Resellers.

4895-1123-1174, v. 2

50.     The Resale Policy requires Authorized Resellers to abide by certain quality controls related to the origins, packaging, storing, and shipping of the Products they sell to ensure customers are protected.

51.     Authorized Resellers must comply with relevant material handling protocols in the Resale Policy and use only "secure, climate-controlled warehouses."

52.     Authorized Resellers must also purchase the Products only from Plaintiff or its authorized distributors to ensure the Products sold under its marks were in fact manufactured by Plaintiff.

53.     Additionally, Authorized Resellers are obligated to maintain customer service phone and email response functions to help facilitate complaints, questions, and/or returns.

54.     The Resale Policy also prohibits the alteration or modification of the Products' original packaging, labeling, or literature.

55.     Specifically, the Resale Policy provides that:

> Reseller shall sell Products in their original packaging. Relabeling, repackaging (including the separation of bundled Products or the bundling of Products), and other alterations to Products or their packaging are not permitted. Tampering with, defacing, covering, or otherwise altering any serial number, UPC code, batch or lot code, SKU or other identifying information on Products or their packaging is prohibited. Reseller may not remove, translate, or modify the contents of any label or literature on or accompanying the Products.

56.     The Resale Policy also requires that Authorized Resellers cooperate with Plaintiff with respect to any Product recall or other consumer safety information dissemination efforts.

11

57.     Because none of these foregoing protections (collectively referred to as the "***Quality Controls***") are assured when a customer purchases from an unauthorized seller, Plaintiff strongly encourages its customers to purchase through Plaintiff's approved channels, to ensure customers receive genuine, defect-free Products.

### *Warranty Protection*

58.     The Resale Policy also specifies that Plaintiff's product warranties (the "***Warranty***") are void if sold by unauthorized resellers such as Defendant.

59.     Specifically, the Resale Policy sets forth that:

> Reseller may extend to any proper purchaser of the Products the original manufacturer's warranty in accordance with its terms.   Reseller may not modify or alter the original manufacturer's warranty, represent or characterize the original manufacturer's warranty in any misleading manner, or extend its own warranty with respect to the Products. Failure to comply with this Policy will result in the total forfeiture of Reseller's right to offer Brand Owner's consumer warranty.

60.     Both the Reseller Agreement and the Resale Policy make clear that the sale of the Products on the Amazon Marketplace and/or on the Walmart Marketplace is strictly prohibited.

61.     Accordingly, Products sold by Defendants on the Amazon Marketplace or on Walmart Marketplace do not come with the Warranty, as such sales violate the Resale Policy.

### *Authorized Reseller Protections*

12

62.     In addition to protecting customers, the Resale Policy is designed to encourage fair competition between Authorized Resellers and ensure that becoming an Authorized Reseller is a worthwhile venture.

63.     By requiring resellers to enter into the Reseller Agreement and/or abide by the Resale Policy and Quality Controls, it ensures a level playing field for all Authorized Resellers.

64.     Legitimate and fair competition is good for Plaintiff's customers and Plaintiff's Authorized Resellers.

### *Brand Protections*

65.     The Resale Policy limits resellers' use of the Trademarks to avoid brand dilution, tarnishment, and confusion as to the origin of the Products.

66.     Specifically, the Resale Policy provides that:

> Resellers that comply with this Policy have a limited, non-exclusive, non-sublicensable, revocable license to use Brand Owner's trademarks and copyrights in connection with the sale of the Products. Reseller shall not alter, modify, or change any trademark or copyright, nor shall Reseller use any trademark or copyright other than for the promotion and sale of the Products, nor shall Reseller use any trademark or copyright in any manner that negatively impacts such trademark or copyright or the Brand Owner. Failure to comply with the Policy will result in the automatic revocation of the license granted herein and a total forfeiture of the rights granted herein. Brand Owner reserves the right to revoke this license at any time for any or no reason.

67.     Plaintiff takes these steps to protect its reputation and goodwill that it has spent considerable time and effort establishing, building, and maintaining.

68.     Plaintiff has invested significant time, effort, and resources to ensure that the consuming public has a positive perception of Plaintiff and Plaintiff's Products.

69.     Plaintiff's reputation and goodwill is a valuable resource, and one which Plaintiff is careful to protect.

70.     Resellers who provide materially altered and inferior Products harm Plaintiff's reputation and goodwill because the failings of such Products are associated with Plaintiff, not with the resellers.

71.     Plaintiff has implemented these measures to preserve brand integrity, maintain the high quality of the Products, and ensure customers are receiving genuine, defect-free products.

72.     When sellers fail to abide by these requirements, it poses risks to customers and damages the goodwill and reputation of Plaintiff.

### *Defendants' Scheme to Sell the Products Without Plaintiff's Consent, Without the Warranty, and Without Abiding by the Resale Policy*

73.     At least since November 2023, Plaintiff has been aware of Defendants' sale of materially altered Products bearing the Trademarks without authorization, without Plaintiff's consent, and in violation of the Resale Policy.

74.     Finduq sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront Finduq and possibly other websites, including the Walmart Marketplace, without Plaintiff's authorization. **See Exhibit D.1.**

75.     Lydia Online sold and/or sells the Products on the Amazon Marketplace

14

through the Amazon storefront Lydia Online and possibly other websites without Plaintiff's authorization. **See** **Exhibit D.2**.

76.     AnsasGlobal sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront AnsasGlobal and possibly other websites without Plaintiff's authorization. **See** **Exhibit D.3**.

77.     CerberusTrading sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront CerberusTrading and possibly other websites without Plaintiff's authorization. **See** **Exhibit D.4**.

78.     WillowUs sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront WillowUs and possibly other websites without Plaintiff's authorization. **See** **Exhibit D.5**.

79.     BookandBeyond sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront BookandBeyond and possibly other websites, including the Walmart Marketplace, without Plaintiff's authorization. **See** **Exhibit D.6**.

80.     GreenyGreen sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront GreenyGreen and possibly other websites, including the Walmart Marketplace, without Plaintiff's authorization. **See** **Exhibit D.7**.

81.     ProDeals sold and/or sells the Products on the Amazon Marketplace through the Amazon storefront ProDeals and possibly other websites without Plaintiff's authorization. **See** **Exhibit D.8**.

82.     Aquaverde Trade sold and/or sells the Products on the Amazon Marketplace

and possibly other websites without Plaintiff's authorization. **See** **Exhibit D.9**.

83.     The Kutlu Defendants have sold the Products on the Amazon Marketplace and the Walmart Marketplace through the Defendant Entities.

84.     Defendant Entities share the same address as their principal place of business, located at 238 Lindbergh Place (the "*Warehouse*"), but with separate suites.

85.     GreenyGreen, Finduq, ProDeals, WillowUs, and Aquaverde Trade are owned directly or indirectly by Ali.

86.     BookandBeyond, AnsasGlobal, and CerberusTrading are owned directly or indirectly by Nurten.

87.     Plaintiff understands that the Kutlu Defendants are using Defendant Entities to work in concert with one another to purchase the Products, store the Products, and unlawfully resell the Products from the Warehouse, without Plaintiff's authorization or consent.

88.     Because Defendant Entities are unauthorized resellers of the Products, Plaintiff cannot verify that Defendant Entities abide by the Quality Controls.

89.     Plaintiff understands that Defendant Entities do not offer the same level of customer service as Plaintiff or its Authorized Resellers and Defendant Entities do not abide by the Quality Controls.

90.     Improperly handled Products could be damaged, be subjected to adverse conditions, or experience other unexpected issues.

16

91.    Per the terms of the Resale Policy, Defendant Entities are prohibited from selling on the Amazon Marketplace and/or the Walmart Marketplace

92.    Because Plaintiff cannot verify that Defendants abide by the Quality Controls and Defendant Entities are not authorized to sell on the Amazon Marketplace or the Walmart Marketplace, Defendant Entities cannot offer the Warranty.

93.    Amazon's *Marketplace Items Condition Guidelines*[1] require that any product that is listed as "New" come with the "Original manufacturer's warranty, if any." *See* AMAZON.COM, INC., *Marketplace Items Condition Guidelines,* https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720 (Last visited: June 7, 2024).

94.    Defendant Entities list the Products for sale as "New" under the Product's unique ASIN, but the Products do not come with the Warranty, which, *inter alia*, violates Amazon's policy.

95.    These issues mean that customers are not getting what they expect or what they pay for.

96.    Instead, customers are receiving altered products that are materially different, which may substantially impact the customer's experience with the Products and therefore, with Plaintiff's brand.

97.    As a result, the Products sold by Kutlu Defendants, through Defendant Entities, are non-genuine Products, and such Products are inferior to Products sold by

---

[1] The Guidelines are available at:
https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720

Authorized Resellers, as they do not come with the Warranty or the same suite of services as Products sold by Authorized Resellers.

98.    Additionally, Products sold by Kutlu Defendants, through Defendant Entities, do not appear to be handled with the same Quality Controls as Products sold by Authorized Resellers, which may result in customers purchasing expired, spoiled, tainted, or otherwise defective Products.

99.    By selling non-genuine and inferior Products, Defendants are harming consumers and are infringing on Plaintiff's rights in and to the Trademarks.

100.    The sale of non-genuine and inferior Products has tarnished and diluted the goodwill and distinctive quality of the Trademarks.

### *Plaintiff Demands Defendants Cease Selling the Products*

101.    Plaintiff sent multiple cease-and-desist letters to Defendants, notifying Defendants of their unauthorized sales and violations of Plaintiff's rights in the Trademarks and demanding that Defendants cease sales of the Products.

102.    Plaintiff, through undersigned counsel, sent a cease-and-desist letter (the "*First Letter*") on November 13, 2023, via certified mail and email to Defendants, requesting Defendants cease their infringing sales of the Products. The First Letter is attached as **Exhibit E**.

103.    Defendants did not respond to the First Letter and continued their unauthorized sale of the Products.

4895-1123-1174, v. 2

104.    Plaintiff, through undersigned counsel, sent a second cease-and-desist letter (the "*Second Letter*") on November 28, 2023, via certified mail and email to Defendants, requesting Defendants cease their infringing sales of the Products. The Second Letter is attached as **Exhibit F**.

105.    The Second Letter also informed Defendants that their continued sale of Products now amounted to willful trademark infringement.

106.    Plaintiff, through undersigned counsel, sent a third cease-and-desist letter (the ("*Third Letter*" and with the First Letter and Second Letter, the "*Letters*") on December 18, 2023, via certified mail and email to Defendants, requesting Defendants cease their infringing sales of the Products and notifying Defendants a lawsuit would be filed against them. The Third Letter is attached as **Exhibit G**.

107.    The Letters notified Defendants of Plaintiff's rights in the Trademarks and requested that Defendants cease selling the Products without Plaintiff's authorization or consent.

108.    However, Defendants failed to respond to the Letters.

109.    Instead, Defendants ignored the Letters and continued to sell the Products, confusing and misleading the consuming public.

110.    As of the date of this filing, Defendants have not agreed to cease and desist from selling the Products and infringing upon Plaintiff's rights in the Trademarks, and instead, Defendants continue to sell the Products.

111.    Plaintiff initiated this action after Defendants ignored Plaintiff's requests.

4895-1123-1174, v. 2

## Claim One
### Declaratory Judgment/Injunctive Relief

112.     Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

113.     An actual and justiciable controversy exists between Plaintiff and Defendants related to whether Defendants have the right to sell the Products without Plaintiff's consent and in violation of Plaintiff's rights in the Trademarks.

114.     The Court, pursuant to N.J. Ct. R. 4:4-4 and Fed. R. Civ. P. 57, should declare that Defendants have no right or authorization to sell the Products or use the Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

115.     The Court should further declare that the Letters gave Defendants actual notice that they were not authorized to use the Trademarks, and any continued use of the Trademarks or unauthorized sales of the Products constitutes willful violations of Plaintiff's rights in the Trademarks.

116.     Such a declaration is proper, pursuant to N.J. Rev. Stat. § 56:9-10 and 28 U.S.C. § 2201, because, *inter alia*, the declaration would terminate the actual and justiciable controversy between Plaintiff and Defendants and remove any uncertainty with respect to this issue.

117.     Additionally, the Court should enjoin Defendants from any further sales of the Products or use of the Trademarks.

4895-1123-1174, v. 2

**Claim Two**
**Common Law Unfair Competition**

118.    Plaintiff incorporates each and every preceding paragraph as if fully restated

herein.

119.    Plaintiff is a licensee of the Trademarks with the right to enforce its rights

therein.

120.    The Trademarks are valid and subsisting marks, in full force and effect, and

registered with the United States Patent and Trademark Office.

121.    Defendants use the Trademarks in connection with their sale of the Products

without Plaintiff's authorization or consent.

122.    The Products sold by Defendants bearing the Trademarks are not Products that

are purchased and sold in accordance with the Resale Policy or pursuant to a Reseller

Agreement.

123.    The Products sold by Defendants bearing the Trademarks do not come with

Plaintiff's Warranty because Plaintiff's Warranty only attaches to Products sold in accordance

with the Resale Policy or pursuant to a Reseller Agreement.

124.    Defendants have not signed a Reseller Agreement, and further they fail to

abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly

or its Authorized Resellers, selling the Products without consent of Plaintiff on the Amazon

21

Marketplace and Walmart Marketplace, and failing to abide by the Quality Controls. *See* Exh. C.

125.     Defendants sold the Products for the purpose of profiting from Plaintiff's brand name and reputation by falsely associating itself with Plaintiff to the consuming public in e-commerce marketplaces, including but not limited to the Amazon Marketplace and the Walmart Marketplace.

126.     Because the Products sold by Defendants do not have the Warranty and are not sold pursuant to the Resale Policy or a Reseller Agreement, these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

127.     Defendants' actions, including, but not limited to, their unauthorized sale of the Products and their unauthorized use of the Trademarks constitutes unfair competition.

128.     Defendants' actions have damaged Plaintiff in the form of, *inter alia*, lost sales, lost profits, interference with prospective business relationships, trademark infringement, trademark dilution, tarnishment, and reputational brand value.

129.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### Claim Three
### Trademark Infringement (15 U.S.C. § 1114)

130.     Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

131.    Plaintiff is a licensee of the Trademarks with the right to enforce its rights therein.

132.    The Trademarks are valid and subsisting mark, in full force and effect, and are registered with the United States Patent and Trademark Office.

133.    Defendants use the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

134.    The Products sold by Defendants bearing the Trademarks do not come with the Warranty, and Plaintiff further understands that Defendants do not abide by the Quality Controls.

135.    Defendants further fail to abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly or its Authorized Resellers, selling the Products without consent of Plaintiff on the Amazon Marketplace and the Walmart Marketplace, and failing to abide by the Quality Controls. *See* Exh. C.

136.    Because the Products sold by Defendants do not have the Warranty and are not handled with the requisite Quality Controls, the Products sold by Defendants are not genuine and are materially different from Products sold by Plaintiff or its Authorized Resellers.

137.    Defendants' unauthorized sales of the Products bearing the Trademarks has infringed on, and damages the value of, the Trademarks.

138.    Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendants come with the

Warranty and the same suite of services as Products sold by Plaintiff or Authorized Resellers, when, in fact, the Products sold by Defendants do not.

139.     Confusion is more likely given that Defendants list the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendants' sale of the Products.

140.     Confusion is also more likely as a result of the single Amazon ASIN used to sell the Products.

141.     Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

142.     Plaintiff informed Defendants that their sales of the Products infringed on Plaintiff's rights in the Trademarks.

143.     As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

144.     Plaintiff is entitled to recover damages from Defendants' infringement and disgorgement of any profits from Defendants' infringing sales of the Products.

145.    Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendants' infringement of the Trademarks is willful.

**Claim Four**
**Unfair Competition (15 U.S.C. § 1125(a))**

146.    Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

147.    Plaintiff is a licensee of the Trademarks with the right to enforce its rights therein.

148.    The Trademarks are a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

149.    Defendants use the Trademarks in connection with their sale of the Products without Plaintiff's authorization or consent and despite notice and demand from Plaintiff.

150.    The Products sold by Defendants bearing the Trademarks do not come with the Warranty, and Plaintiff understands that Defendants do not abide by the Quality Controls.

151.    Because the Products sold by Defendants do not have the Warranty and are not sold in accordance with the Quality Controls, these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

152.    Defendants further fail to abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly or its authorized resellers, selling the Products

4895-1123-1174, v. 2

without consent of Plaintiff on the Amazon Marketplace and the Walmart Marketplace, and failing to abide by the Quality Controls. *See* Exh. C.

153.     Confusion is more likely given that Defendants list the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendants' sale of the Products.

154.     Confusion is also more likely given the single Amazon ASIN used to sell the Products.

155.     Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, Defendants are not.

156.     Defendants sold Plaintiff's Products for the purpose of profiting from Plaintiff's brand name and reputation by falsely associating itself with Plaintiff to the consuming public in e-commerce marketplaces, including but not limited to the Amazon Marketplace and the Walmart Marketplace.

157.     Defendants' unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

158.     Plaintiff informed Defendants that their sales of the Products infringed on Plaintiff's rights in the Trademarks.

159.     As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and

irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

160.    Plaintiff is entitled to recover damages from Defendants' unfair competition in their use of the Trademarks and sale of the Products without Plaintiff's authorization or consent.

161.    Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a).

**Claim Five**
**Trademark Dilution (15 U.S.C. § 1125(c))**

162.    Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

163.    Plaintiff is a licensee of the Trademarks with the right to enforce its rights therein.

164.    The Trademarks are valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

165.    Plaintiff has continuously used the Trademarks in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks.

166.    As a result, the Trademarks have become famous as consumers have come to associate the Trademarks with high-quality supplements and Plaintiff.

4895-1123-1174, v. 2

167.    Plaintiff sells the Products bearing the Trademarks throughout the United States.

168.    Defendants are using the Trademarks in connection with the sale of the Products.

169.    However, the Products sold by Defendants are materially different than genuine Products sold by Plaintiff because Defendants' products do not come with the Warranty and upon information and belief, are not sold in accordance with the Quality Controls.

170.    Because Defendants are selling an inferior product, Defendants' use of the Trademarks is causing the dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks in violation of 15 U.S.C. § 1125(c).

171.    As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

172.    Plaintiff is entitled to recover damages from Defendants' infringement of the Trademarks, dilution and tarnishment of the Trademarks and Plaintiff's brand, and disgorgement of any profits from Defendants' infringing sales of the Products.

173.    Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C. § 1117(a) because Defendants' infringement of the Trademarks is willful.

## Claim Six
### False Advertising (15 U.S.C. § 1125(a)(1)(B))

174.    Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

175.    Plaintiff is a licensee of the Trademarks with the right to enforce its rights therein.

176.    The Trademarks are valid and subsisting trademarks in full force and effect.

177.    Through the Defendants' storefronts on the Amazon Marketplace, Defendants have willfully and knowingly used, and continues to use, the Trademarks in interstate commerce for purposes of advertising, promoting, and selling the Products without Plaintiff's consent.

178.    Defendants' advertisements and promotions of the Products unlawfully using the Trademarks have been disseminated throughout commerce to consumers across the country.

179.    Defendants have used, and continue to use, the Trademarks to falsely advertise that the Products Defendants sell come with the Warranty.

180.    Such advertisement is false because the Warranty does not come with the Products sold by Defendants.

181.    Products purchased from Plaintiff and its Authorized Resellers come with the Warranty.

182.    Plaintiff cannot ensure the source, legitimacy, or quality of products sold by unauthorized resellers such as Defendants.

183.    Therefore, products sold by unauthorized resellers like Defendants do not come with the Warranty.

184.    Indeed, Amazon implicitly notifies consumers that products listed as "New" for sale on the Amazon Marketplace come with a manufacturer's warranty.

185.    Products listed on the Amazon Marketplace as "New" must come with any warranty offered by the manufacturer.

186.    Defendants list the Products as "New" on their storefronts on the Amazon Marketplace.

187.    Such representation is false because the Products sold by Defendants do not come with the Warranty.

188.    Defendants' use of the Trademarks in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' Products because it suggests that the Products come with the Warranty when, in fact, they do not.

143.    Defendants' use of the Trademarks in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademarks is likely to cause confusion, cause mistake, or deceive because it falsely suggests that the Products Defendants offer for sale are genuine and authentic Products that come with the Warranty, when in fact they do not.

4895-1123-1174, v. 2

144.    Defendants' unauthorized and deceptive use of the Trademarks is material and likely to influence customers to purchase the Products they sell, as consumers are likely to believe that Products Defendants advertise using the Trademarks are genuine Products that come with the Warranty when, in fact, they do not and Defendants cannot offer the Warranty.

145.    Defendants' unauthorized use of the Trademarks in advertising and sale of the Products without Plaintiff's consent infringes on the Trademarks.

146.     As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be determined at trial.

147.    Plaintiff is entitled to recover its damages caused by Defendants' false advertisement of the Products on the Amazon Marketplace and disgorgement of Defendants' profits from their willfully infringing sales and unjust enrichment.

148.    Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement, and unless Defendants are permanently enjoined, Plaintiff will continue to suffer.

149.    Plaintiff is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Trademarks.

## Claim Seven
### Tortious Interference with Contract

150.    Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

151.    Plaintiff has entered into Reseller Agreements with Authorized Resellers to sell NBPure Products. These Reseller Agreements specifically prohibit Plaintiff's authorized Resellers from selling NBPure Products to third parties, such as Defendants, for purposes of resale.

152.    Plaintiff has not, itself, sold any NBPure Products to Defendants.

153.    Given the foregoing facts it is plausible and a reasonable inference that Defendants have purchased the NBPure Products they are reselling, and have resold, from one or more of NBPure's authorized Resellers.

154.    Defendants knew that NB Pure's Reseller Agreements prohibit Resellers from selling NBPure Products to third parties, such as Defendants, for purposes of resale at least since receipt of the Letters, if not longer.

155.    Despite this knowledge, Defendants intentionally, knowingly, and willfully interfered with the agreements between NBPure and its Authorized Reseller(s) by inducing Plaintiff's Reseller(s) to sell NBPure Products to Defendants in breach of the Reseller Agreement(s).

156.    As a direct and proximate cause of Defendants' interference, NBPure has suffered, and will continue to suffer, damages in an amount to be proven at trial.

4895-1123-1174, v. 2

**Claim Eight**
**Civil Conspiracy**

157.   Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

158.   Defendants have entered into a malicious combination in a way not competent for one alone by acting in concert with one another to, *inter alia*, purchase, market, and sell Plaintiff's Products without Plaintiff's authorization to the detriment of the consuming public.

159.   Defendants have harmed Plaintiff by, *inter alia*: (i) infringing upon Plaintiff's valuable intellectual property, including the Trademarks; (ii) tarnishing and diluting the Trademarks; (iii) harming Plaintiff's brand, goodwill, and reputation by offering materially different products and associating themselves with Plaintiff; and (iv) falsely advertising the Products as "New" on the Amazon Marketplace when Defendants cannot offer the Warranty to consumers.

160.   As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**Claim Nine**
**Piercing the Corporate Veil**

161.   Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

162.   At all relevant times, there has been a unity of interest and ownership that the separate personalities of Defendant Entities and Kutlu Defendants ceased to exist.

163.    Plaintiff understands that Defendants work in concert with one another to purchase the Products, store the Products at the Warehouse, and unlawfully resell the Products from the Warehouse, without Plaintiff's authorization or consent.

164.    Kutlu Defendants use the Defendant Entities as their alter ego and abuse the formalities in order to advance their own personal interests.

165.    Defendants has perpetrated a fraud, injustice, or the like by confusing and misleading consumers into believe they are purchasing new Products, from different entities, when in fact the Defendant Entities are operated and owned directly or indirectly by Kutlu Defendants.

166.    Adherence to the fiction of the separate existence between Defendant Entities and Kutlu Defendant would promote injustice because it would permit Kutlu Defendants to limit liability exclusively to Defendant Entities and prohibit Plaintiff from recovering damages resulting from their conduct.

167.    As a result, Plaintiff is entitled to pierce the corporate veil as to Kutlu Defendants, in their capacity as the owners of Defendant Entities, and accordingly hold them personally liable for damages to Plaintiff.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.    As to Claim One, a declaratory judgment stating that Defendants are unauthorized to sell the Products and a judgment entry permanently enjoining Defendants from any further sales of the Products and using Plaintiff's intellectual property;

B.    As to Claim Two, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits

34

from the unauthorized sales of the Products, and permanently enjoin Defendants from any further sales of the Products and using Plaintiff's intellectual property;

C.     As to Claim Three, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants from any further sales of the Products and using Plaintiff's intellectual property;

D.     As to Claim Four, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants from using Plaintiff's intellectual Property, including the Trademarks, and selling the Products;

E.     As to Claim Five, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants using Plaintiff's intellectual Property, including the Trademarks, and selling the Products;

F.     As to Claim Six, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from all unauthorized sales of the Products, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

G.     As to Claim Seven, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from all unauthorized sales of the Products, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

H.     As to Claim Eight, award compensatory damages in an amount to be determine at trial, as well as attorneys' fees and costs and permanently enjoin Defendants from selling the Products and using Plaintiff's intellectual property, including the Trademarks;

I.     As to Claim Nine, pierce the corporate veil, award compensatory damages in an amount to be determine at trial, as well as attorneys' fees and costs and permanently enjoin Defendants from selling the Products and using Plaintiff's intellectual property, including the Trademarks; and

J.     All other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

## DESIGNATION OF TRIAL COUNSEL

Michael Townsend, Esq. is hereby designated as trial counsel for Plaintiff Nutritional Brands Inc.

Respectfully submitted,

**NORRIS McLAUGHLIN, P.A.**

Dated:  August 14, 2024

/s/ Michael C. Townsend
MICHAEL C. TOWNSEND
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
Phone: 908-252-4242

*Local Counsel for Plaintiff Nutritional Brands Inc.*

**KOHRMAN JACKSON & KRANTZ LLP**

Dated:  August 14, 2024

/s/ Alex E. Jones
ALEX E. JONES (0095807)
KYLE D. STROUP (0099118)
THOMAS J. HUNT (0103902)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114
Phone: 216-696-8700
Fax: 216-621-6536

*Counsel for Plaintiff Nutritional Brands Inc.*
*(pro hac vice forthcoming)*

## <u>LOCAL CIV. R. 11.2 CERTIFICATION</u>

I certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:  August 14, 2024

<u>/s/ Michael C. Townsend</u>
Michael C. Townsend, Esq.
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Blvd. 8th Fl.
Bridgewater, NJ 08807
(908) 252-4242
*Local Counsel for Plaintiff Nutritional Brands Inc.*

37